# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

NIKO SIMMONS,

      Plaintiff,                  CASE NO. 08-CV-14546

v.                           DISTRICT JUDGE ROBERT H.  CLELAND
                                  MAGISTRATE JUDGE CHARLES E. BINDER

AUGUSTINE, Sergeant;
WALLS, C/O;
JOHN DOES, C/O;

      Defendants.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
## ON DEFENDANTS' MOTION TO DISMISS, DEFENDANTS' MOTION FOR
## SUMMARY JUDGMENT AND PLAINTIFF'S VARIOUS MOTIONS
(Docs.  20, 22, 26, 27, 28, 29, 35, 36, 38)

## I.      RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' motions (Docs.
20, 22) be **GRANTED**, that the John Doe defendants be dismissed, and that the case be dismissed
in its entirety with prejudice.  **IT IS FURTHER RECOMMENDED** that Plaintiff's various
motions be denied as moot.  (Docs. 26, 27, 28, 29, 35, 36,[1] 38.)

---

[1]This document was originally entitled "Demand for Jury Trial" but was changed to "Motion for Jury Trial" by Order dated May 29, 2009.  (Doc. 41.)

## II.   **REPORT**

### A.   **Background**

On October 27, 2008, Plaintiff Niko Simmons,[2] a state prisoner then incarcerated at the

Macomb Correctional Facility in New Haven, Michigan,[3] filed this *pro se* federal civil rights

complaint under 42 U.S.C. § 1983 against Patricia Caruso, Director of the Michigan Department

of Corrections[4]; Sergeant Augustine[5]; Corrections Officer ("C/O") Walls[6]; and "John Does C/O."

Plaintiff alleges that on October 21, 2006, he was assaulted by officers under the command of

Defendant Austin "in retaliation for C/O Walls being embarrassed on 8/22/06, C/O Walls infracted

Petitioner Niko Simmons with a Major Misconduct Report for (020)(026) Disobeying a Direct

Order and Insolence MCR No # 0061.  Assault Happened 10/21/06 in the Level 1 Housing Unit

at MRF, violating U.S.C.A. Amendments 1, 8, 14."  (Compl., Doc.  1 at 4.)

Plaintiff also asserts several due process claims:  (1) removal from public works, (2) failure

to comply with Michigan policy requirements governing community placement, and (3) failure to

comply with Michigan statutory requirements regarding issuance of discharge check.  Plaintiff

avers that his "due process rights were also violated when he was taken out of public works

segment from systematic removal as a mere result of the behavior on the P.W.A. site."  (*Id.* at 5.)

On October 23, 2006, "Petitioner was allowed to go to McMorran Arena in Port Huron on Miss

---

[2]I note that Plaintiff refers to himself as Petitioner.  The terms Plaintiff and Petitioner will be considered synonymous for purposes of this Report.

[3]Plaintiff is now at the Carson City Correctional Facility in Carson City, Michigan.

[4]The case caption initially included Patricia Caruso as the lead defendant; she was terminated from the case on January 9, 2009, by Order of U.S. District Judge Robert H. Cleland.  (Doc. 6.)

[5]This defendant's actual name is Daniel Austin and he will be referred to by his proper name in this Report, although when quoting Plaintiff's complaint, the name Augustine will be preserved.

[6]This defendant's actual name is Donald Wall and he will be referred to by his proper name in this Report, although when quoting Plaintiff's complaint, the name Walls will be preserved.

Nelson Ones' crew, at or around 8:00-8:30 am I was picked up from my P.W.A. assignment." (*Id.*)
Plaintiff further complains that he "was released on the date of 10/22/2006 Sunday at around 10
o'clock without his [m]andatory $75.00 discharge check violating MCL 791.237(2)(B)." (*Id.* at
6.) Plaintiff also alleges that although he "became eligible for screening for (CRP) Community
Residential Placement" and filed grievances for the Michigan Department of Corrections'
(MDOC's) failure to do so, the MDOC's response that Plaintiff "'posed a threat to the
community'" violated due process and the *ex post facto* clause because he was not given a "mere
hearing before an [sic] hearing officer pursuant to MCL 791.251, which has [m]andatory explicit
language which is not discretionary." (*Id.* at 7.) Plaintiff alleges that he was eligible for CRP
placement at the time he was sentenced and the MDOC policy changed while he was incarcerated.
(*Id.*)

Plaintiff also claims a violation of the "equal protection clause of both state and federal
constitutions" when he was "segregated 10/21/2006 for going to the vending machine" and kept
in segregation "until Macomb Correctional Facility (MRF) discharged Petitioner absent any
[r]eview of a major misconduct, or notice of intent, due process requires at the very least a timely
[r]eview of the type of behavior that is unmanageable . . . ." (*Id.* at 5-6.)

Plaintiff requests declaratory relief and compensatory and punitive damages "to be decided
by court's expertise in deterring future violations . . . along with $75.00 in accords with MCL
791.237." (*Id.* at 10.)

On January 21, 2009, this case was referred to the undersigned Magistrate Judge for pretrial
case management. (Doc. 8.) Currently before the Court are Defendants Austin and Wall's motion
to dismiss for failure to exhaust administrative remedies (Doc. 20) and motion for summary
judgment. (Doc. 22.) In lieu of specifically responding to these motions, Plaintiff filed a motion

3

for discovery (Doc. 26), a motion for discovery re: assault 10/21 (Doc. 27), a motion for summary judgment (Doc. 28), and a motion for preliminary injunction. (Doc. 29.)  Defendants have responded to several of Plaintiff's motions (Docs. 31, 32, 33), Plaintiff replied to Defendants' response to his motion for discovery re: assault 10/21, and Plaintiff replied to Defendants' response to his motion for preliminary injunction.  (Docs. 34, 37.)  Most recently, Plaintiff filed a motion for intervention restraining the business office (Doc. 35,) a motion for jury trial (Doc. 36,) and a motion to take deposition of an inmate. (Doc. 38.)  No responses to these motions have been filed. Upon review of the documents, I conclude that pursuant to E.D. Mich. LR 7.1(e)(2), these motions are ready for Report and Recommendation without oral argument.

### B.    Motion Standards

In facing a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief."  *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001).  As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 1974 (rejecting the traditional Rule 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).  Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp.*, 550 U.S. at 555 (citations omitted).  Even though a complaint need not contain "detailed" factual

4

allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

The Supreme Court recently explained that the "tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, ___ S. Ct. ___, 2009 WL 1361536 at *13 (May 18, 2009) (finding assertions that a defendant was the "principal architect" of an invidious policy and another defendant was "instrumental" in adopting and executing a policy of invidious discrimination were insufficient to survive a motion to dismiss because they were "conclusory" and thus not entitled to the presumption of truth). Although Rule 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era," it "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. . . . When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

Where a plaintiff is proceeding without the assistance of counsel, the court is required to liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). However, courts may not rewrite a complaint to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128 (10th

Cir. 1999), nor may courts construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993). Neither may the court "conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), nor create a claim for Plaintiff, *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975), because to hold otherwise would require the court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

A motion for summary judgment will be granted under Rule 56(c) of the Federal Rules of Civil Procedure where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is

[more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos*., 8 F.3d 335, 339-40 (6th Cir. 1993).  When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist.  *Street*, 886 F.2d at 1479-80.  Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992).  The Sixth Circuit has explicitly instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party:  seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The elements of a claim under 42 U.S.C. § 1983 are:  (1) the violation of a right secured by the federal Constitution or federal law that was (2) committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).

### C.    Analysis and Conclusions

### 1.    Exhaustion

Prisoner civil rights cases are subject to the Prison Litigation Reform Act's ("PLRA") mandate that "[n]o action shall be brought with respect to prison conditions under § 1983 . . . by

7

a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). To exhaust a claim, a prisoner must proceed through all of the steps of a prison or jail's grievance process, because an inmate "cannot abandon the process before completion and claim that he has exhausted his remedies." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999). The Supreme Court held in *Woodford v. Ngo*, 548 U.S. 81, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006), that failure to "properly" exhaust bars suit in federal court. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 90-91.

The Supreme Court further clarified that failure to exhaust is an affirmative defense, thus eliminating the need for prisoners to plead and prove exhaustion. *Jones v. Bock*, 549 U.S. 199, 215, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). The Court further held that "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 127 S. Ct. at 922-23.

The Michigan Department of Corrections provides prisoners with a grievance procedure for bringing forward their concerns and complaints. *See* MDOC Policy Directive ("PD") 03.02.130 (eff. Dec. 19, 2003).[7] The MDOC's grievance procedure consists of steps that a prisoner must follow prior to filing a complaint in court, and each step is accompanied by a time limit. First, within two business days after becoming aware of a grievable issue, an inmate should

---

[7]The policy directive was superceded on March 5, 2007, but since the conduct at issue here occurred before that date, the 2003 version applies.

8

attempt to verbally resolve the dispute with those involved.  MDOC PD 03.02.130(R).  If such an

attempt is impossible or unsuccessful, the inmate must then submit a Step I grievance form within

five days.  MDOC PD 03.02.130(X).  The grievance policy provides the following instructions

regarding what information needs to be included in a grievance:

> The issues shall be stated briefly.  Information provided shall be limited to the <u>facts</u>
> involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates,
> times, places and names of all those involved in the issue being grieved are to be
> included.

MDOC PD 03.02.130(T).[8]

The prison staff is required to respond in writing to a Step I grievance within fifteen days,

unless an extension is granted.  MDOC PD 03.02.130(Y).  If the inmate is not satisfied with the

response, or does not receive a response within fifteen days, he then must request a Step II appeal

form within five days, and has an additional five days to submit it.  MDOC PD 03.02.130(DD).

Once again, if the inmate is dissatisfied with the response at Step II or does not receive a Step II

response within fifteen days, he has ten business days to submit a Step III appeal to the Prisoner

Affairs Section.  MDOC PD 03.02.130(HH).  The Step III response concludes the administrative

grievance process.

In this case, Defendants contend that Plaintiff failed to properly exhaust because he failed

to file any grievances at the Step III level during the entire time of his incarceration at the Macomb

Correctional Facility.  (Doc. 20 at 11; Armstrong Aff., Doc. 20, Ex. B ¶¶ 15-16; Grievance

database inquiry, Ex. B at 5.)  Plaintiff offers no evidence to the contrary.  Therefore, I suggest that

Defendants' motion to dismiss or for summary judgment be granted because Plaintiff failed to

---

[8]I note that the MDOC grievance policy referred to by the Supreme Court in *Jones v. Bock* was the
November 1, 2000, version, *see Jones*, 127 S. Ct. at 916, which did not require inmates to include in their grievances
the dates, times, places and names of all those involved.  The policy directive at issue here – the December 2003
version – clearly  requires this higher level of specificity.

comply with the mandatory requirement that he administratively exhaust his claims prior to filing suit in federal court.

## 2.   Alternative Analysis - Plaintiff's claims

Even if the substance of Plaintiff's claims is addressed, I suggest that the result would be the same.

### a.   Due Process

Plaintiff's due process claims fall into three categories: (1) removal from a public works program, (2) failure to comply with Michigan's statutory requirements governing community placement, and (3) failure to issue a $75.00 discharge check as required by Michigan law. (Doc. 1 at 5-7.)

In order to prevail on a procedural due process claim, plaintiff must: (1) demonstrate that he is deprived of property as a result of established state procedure that itself violates due process rights; or (2) prove that the defendants deprived him of property pursuant to a "random and unauthorized act" and that available state remedies would not adequately compensate for the loss. *See Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991).[9] An inmate has the burden of pleading and proving that the state remedies for redressing the wrong are inadequate. *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983). Plaintiff has not alleged that established state procedures violate due process rights nor has he alleged the absence of state remedies to redress any procedural wrong; therefore, I suggest that summary judgment in favor of defendants should be granted as to the procedural due process claim under the Fifth and Fourteenth Amendments.

---

[9]This holding is derived from *Parratt v. Taylor*, 451 U.S. 527, 537, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981), overruled in part by *Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed.2d 662 (1986), which held that deprivation of liberty or property interests by state employees do not give rise to federal due process claims unless the state fails to afford an adequate post-deprivation remedy. Thus, "a procedural due process claim will not be stated unless the plaintiff pleads and proves that available state remedies are inadequate to redress the wrong." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995).

Even if Plaintiff could show that state processes are inadequate or unavailable, I suggest that he has failed to state a claim based on procedural due process.  To plead a procedural due process claim, a plaintiff must allege:  (1) a life, liberty, or property interest exists and has been subject to interference by the state; and (2) the procedures attendant upon the deprivation of an existing interest were constitutionally insufficient.  *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1990).  Procedural due process rights arise only after a showing that plaintiff holds a constitutionally protected interest.  *Mitchell v. Horn*, 318 F.3d 523, 531 (3rd Cir. 2003); *International Union, United Auto., Aerospace & Agric. Workers of Am., Local 737 v. Auto Glass Employees Fed. Credit Union*, 72 F.3d 1243, 1251 (6th Cir. 1996) (absent protected property interest in continued employment, no process is due).

A Michigan prisoner does not have a constitutionally protected liberty interest in placement in a community residential program ("CRP").  *Codd v. Brown*, 949 F.2d 879, 882 (6th Cir. 1991); *Davis v. Loucks*, 113 F.3d 1234, 1997 WL 215517, at *1 (6th Cir. Apr. 29, 1997).  Nor does a prisoner have a protected liberty interest classification or eligibility for rehabilitative programs, such as the public works assignment ("PWA").  *Moody v. Daggett*, 429 U.S. 78, 88 n.9, 97 S. Ct. 274, 50 L. Ed. 2d 236 (1975); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1995); *Tribell v. Mills*, No. 93-5399, 1994 WL 236499, at *1 (6th Cir. June 1, 1994).  Therefore, I suggest that Defendant's motion for summary judgment be granted as to the due process claim based on the process surrounding placement in a CRP or participation in the PWA.[10]

---

[10]To the extent that Plaintiff could argue that the PWA was akin to a prison job, a prisoner has no legally protected property or liberty interest in a prison job either.  *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989); *Ivey v. Wilson*, 832 F.3d 950, 955 (6th Cir. 1987) ("no prisoner has a constitutional right to a particular job or to any job").

11

As to the failure to issue a discharge check pursuant to Michigan statutory law, the statute provides that "[i]f a prisoner who is discharged without being paroled has less than $75.00 in his or her immediate possession, has no visible means of support, and has conserved personal funds in a reasonable manner, the department shall furnish to that prisoner . . . [a] sum of $75.00 including that amount already in the prisoner's possession." MICH. COMP. LAWS § 791.237(2)(b). Plaintiff has not specifically alleged what sum of money, if any, he had in his possession when discharged. More fundamentally, research has not revealed any precedent indicating that by enacting section 791.237, Michigan legislators intended to create a protected property interest. I further note that courts have held that an inmate cannot state a due process claim for deprivation of a property interest in money placed in a release account or "gate money." *Ward v. Stewart*, 511 F. Supp. 2d 981, 985 (D. Ariz. 2007); *Shahagian v. Dickey*, 646 F. Supp. 1502 (W.D. Wisc. 1986). Thus, it follows that failure to issue a release check could not constitute a due process violation. Furthermore, the state's failure to comply with its own law, rules, or regulations does not, by itself, state a claim under section 1983. *Smith v. Freeland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Spruyette v. Walters*, 753 F.2d 498, 508-09 (6th Cir. 1985); *Cotten v. Davis*, 215 Fed. App'x 464, 468 (6th Cir. Feb. 8, 2007) ("[T]here is no constitutionally protected liberty interest in having a state parole board follow its own statutes and regulations.").

I therefore suggest that Defendants' motion for summary judgment be granted as to all of Plaintiff's due process claims.

### b.   Retaliation

Plaintiff alleges that he was assaulted by officers under the command of Defendant Austin "in retaliation for C/O Walls being embarrassed on 8/22/06, C/O Walls infracted Petitioner Niko Simmons with a Major Misconduct Report for (020)(026) Disobeying a Direct Order and Insolence

MCR No # 0061.  Assault Happened 10/21/06 in the Level 1 Housing Unit at MRF, violating U.S.C.A. Amendments 1, 8, 14." (Compl., Doc. 1 at 4.)  To the extent that this raises a retaliation claim under the First Amendment, I suggest that the claim lacks merit.

A First Amendment retaliation claim consists of the following elements:  (1) the plaintiff was engaged in constitutionally protected conduct; (2) the defendant's adverse action would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) a causal connection between elements one and two, i.e., the adverse action was motivated at least in part by the plaintiff's protected conduct.  *Thaddeus-X v. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999) (en banc); *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004).  However, conclusory allegations of retaliatory motive unsupported by any specific factual foundation are insufficient to state a claim under section 1983.  *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Lanier v. Bryant*, 332 F.3d 999, 1007 (6th Cir. 2003); *Pack v. Martin*, 174 Fed. App'x 256, 259 (6th Cir. 2006); *McMillan v. Fleming*, 136 Fed. App'x 818, 820-21 (6th Cir. 2005).

Here, I suggest that Plaintiff has not met his burden to show that when he allegedly "embarrassed" Defendant Wall,[11] he was engaged in protected conduct under the First Amendment.  *See Hale v.  Scott*, 252 F. Supp. 2d 728 (C.D. Ill. 2003) (inmate's statement in a grievance that female officer was rumored to be having sex with male officers was not protected conduct where inmate had no evidence and female officer was investigated and ridiculed). Plaintiff does not allege that he filed a grievance, was interviewed by a journalist who intended to prepare a news story about conditions in the prison, or engaged in any other speech that would implicate the First Amendment.  *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) ("An

---

[11]Although Plaintiff does not describe how he embarrassed Defendant Wall, Defendant Wall's affidavit refers to an incident on August 22, 2006, when he instructed Plaintiff to adjust his hat in accordance with policy and Plaintiff threw his cap and insulted Defendant Wall.  (Wall Aff., Doc. 22, Ex. A ¶ 3.)

inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf"); *Friedmann v. Corrections Corp. of America*, 11 Fed. App'x 467 (6th Cir. 2001) (prisoner who was interviewed by journalist and who prepared a story about news the prison officials "would prefer you didn't know" was engaged in protected conduct but was not subjected to adverse action when transferred to another facility).

Since Plaintiff has not alleged facts supporting the first element of a retaliation claim, i.e., that he was engaged in protected conduct, I suggest that summary judgment for Defendants is appropriate on Plaintiff's retaliation claim.[12]

### c.   Assault - Eighth Amendment

Plaintiff's allegation that he was assaulted by officers under the command of Defendant Austin on October 21, 2006, is brought under the Eighth Amendment. (Compl., Doc.  1 at 4.)[13] It is beyond dispute that, as a general proposition, an inmate's rights under the Eighth Amendment are violated when government entities or officials are deliberately indifferent to his medical needs

---

[12]I further note that there is likely insufficient temporal proximity to infer a causal connection between the alleged embarrassment of August 2006 and the alleged retaliatory conduct of October 2006.  *See Kinkus v. Village of Yorkville, Ohio*, 289 Fed. App'x 86, 92 (6th Cir. 2008) (one-month lapse between incident and disorderly conduct charge insufficient to establish retaliatory animus); *Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir. 1999) (absent additional evidence, two to five month period too tenuous to establish causal connection); *Cooper v. City of N. Olmstead*, 795 F.2d 1265, 1272 (6th Cir. 1986) (discharge occurring four months after filing discrimination claim insufficient to support an inference of retaliation); *Williams v. Kelley*, No. 07-10999, 2008 WL 4404029, at *13 (E.D. Mich. Sept. 26, 2008) (four month period between filing of grievance and issuance of major misconduct ticket insufficient to support causal connection in retaliation claim).

[13]Defendants also address a potential "conspiracy" claim based upon Plaintiff's wording of this assault claim.  To the extent that one has been raised, I suggest that Plaintiff has failed to properly plead a conspiracy. "[C]onspiracy claims must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983."  *Gutierrez v. Lynch*, 826 F.2d 1534, 1539 (6th Cir. 1987).  Therefore, when proceeding under 42 U.S.C. § 1983 for civil conspiracy, a plaintiff must make some allegation of coordinated actions between the alleged conspirators. *See Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999); *Collyer v. Darling*, 98 F.3d 211, 229 (6th Cir. 1996).  He has failed to do so here. Conclusory, vague accusations that do not describe some "meeting of the minds" cannot state a claim for relief under 42 U.S.C. § 1983.

or his safety.  *See Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

> A prison official violates the Eighth Amendment only when . . . [f]irst, the deprivation alleged must be, objectively, sufficiently serious [and] [s]econd, when the offending conduct itself is not a criminal penalty.  It is the unnecessary and wanton infliction of pain that implicates the Eighth Amendment . . . [t]hus, a prison official will be liable under the Eighth Amendment for failing to protect an inmate only if the official acted with deliberate indifference.

*Davis v. Brian*, No. 98-1810, 1999 WL 503522, at *3 (6th Cir. July 9, 1999) (unpublished) (internal citations and quotations omitted).  "Obduracy or wantonness, not inadvertence or good faith error, characterizes deliberate indifference."  *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992).

In the context of prison discipline, Plaintiff must prove an unnecessary and wanton infliction of pain or the infliction of pain without penological justification.  *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981).  Under the objective inquiry in this context, the question is whether "contemporary standards of decency" have been violated.  *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992).  "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated."  *Id.*  Thus, a prisoner need not prove a significant injury.  *Moore v. Holbrook*, 2 F.3d 697, 701 (6th Cir. 1993).  Under the subjective component, the inquiry involves "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986).  Toward that end, "officials confronted with a prison disturbance must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force."  *Hudson*, 503 U.S. at 6.

Courts are to keep in mind that "corrections officials must make their decisions 'in haste, under pressure, and frequently without the luxury of a second chance.'" *Id.* (quoting *Whitley,* 470 U.S. at 320.)  The factors to be analyzed when considering the conduct of prison officials are:  (1) the need for the application of force; (2) the relationship between the need for force and the amount used; (3) the threat reasonably perceived by the responsible officials; (4) any efforts made to temper the severity of the forceful response; and (5) the extent of the injury inflicted.  *Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 321.  This analysis must be made in harmony with the Supreme Court's admonition that courts should defer to prison officials as they attempt to maintain order and discipline within dangerous institutional settings.  *Whitley*, 475 U.S. at 321-22.  Physical restraints are constitutionally permissible where there is a penological justification for their use. *Rhodes*, 452 U.S. at 346; *Jones v. Toombs*, No. 95-1395, 1996 WL 677750, at *1 (6th Cir. Feb. 15, 1996).  In addition, it should be noted that maximum-security prisoners are "'not usually the most gentle or tractable of men and women.'"  *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

The affidavits of Defendants Wall and Austin as well as the corresponding MDOC documentation indicate that when Plaintiff was observed in the kitchenette at the vending machine and using the microwave, those areas were off-limits because the prison was in lock-down status. (Wall Aff., Doc. 22, Ex. A ¶ 9.)  Plaintiff was told to leave the area and return to his cell but he refused to comply.  (*Id.* ¶ 10.)  Plaintiff then became loud, disruptive, and indicated he would not follow orders because he was being discharged the following day.  (*Id.* ¶ 11; Critical Incident Report, Doc. 22, Ex. B at 6.)  Plaintiff disputes that he was loud or disruptive.  (Doc. 37 at 7.)  At this time, Defendant Wall called Defendant Austin for assistance.  (Wall Aff. ¶ 11.)  Defendant Austin called Plaintiff's name over the PA system, ordering Plaintiff to report to the officer's

16

station, but Plaintiff did not appear.  (*Id.* ¶ 12; Austin Aff. ¶ 4; Critical Incident Report, Doc. 22, Ex. B at 8.)  Defendant Austin ordered the unit closed, and then Defendant Austin and two other officers went to Plaintiff's cell to remove him and place him in segregation.  (Wall Aff. ¶ 13; Austin Aff. ¶ 5.)  Plaintiff refused to come out of his cell, telling Defendant Austin to bring his best five officers to get him out.  (Austin Aff. ¶ 6; Critical Incident Report, Doc. 22, Ex. B at 8.)  Defendant Austin then called the control center for extra staff and a video camera and by the time they arrived, Plaintiff had come out of his cell but refused to be restrained.  (Austin Aff. ¶¶ 7-8.)

By the time the videotaping commenced, Plaintiff was outside of his cell eating potato chips.  (Videotape, Doc. 40.)  When the officers indicated that Plaintiff was going to be taken away, Plaintiff asked "for what?" and then Plaintiff called each of the officers a "bitch" in a loud manner.  Officers surrounded Plaintiff but were several feet away from him.  Plaintiff looked toward one of the officers and made a dismissive wave with his right hand as Plaintiff complained about the process while his left hand was still holding the bag of chips.  The two officers that Plaintiff was facing approached Plaintiff, Plaintiff made another dismissive wave with his right hand, and the officer to Plaintiff's right placed his left hand on Plaintiff's right elbow, then the officer removed his hand from Plaintiff.  (*Id.*)  A few seconds later, the officers came in closer and the officer to Plaintiff's right placed his left hand on the small of Plaintiff's back and placed his right hand on Plaintiff's forearm.  The officer to the left of Plaintiff was outside of the camera's view, but in the next second, Plaintiff is hunched over and being lowered to the ground.  (*Id.*)

According to the affidavits, Defendant Austin continued to order Plaintiff to allow himself to be restrained, but Plaintiff refused and "made an aggressive move toward one of the officers" (Austin Aff. ¶ 9; Critical Incident Report), so Defendant Austin ordered Plaintiff to be restrained.

17

Plaintiff resisted at each step but was eventually lowered to the ground after a "knee strike to his tibial nerve" was applied. Plaintiff then was fully restrained. (Austin Aff. ¶ 9; Critical Incident Report.) In the video, it appears that the strike was made to Plaintiff's knee by the officer to the left of Plaintiff who was out of view of the camera. It further appears that the "aggressive move" referred to must have been the dismissive waves Plaintiff made with his right hand since the video does not reveal any other potentially aggressive action on the part of Plaintiff. It is possible, however, that some activity perceived as aggression occurred outside the scope of the camera's view. Once on the ground, it is difficult to tell the extent to which Plaintiff resisted, if at all, but the officers were telling Plaintiff to stop resisting and it appeared that the officers were exerting themselves to keep Plaintiff in position on the floor.

The video reveals that Plaintiff was then escorted, walking backwards, down the hall. Plaintiff walked without incident for a while, but then the officer on the left side of the screen (the right side of Plaintiff who was walking backwards) appeared to have some difficulty with Plaintiff's right handcuff. The officer examined the handcuff more closely, Plaintiff complained and called the officer a "bitch," and then Plaintiff went out of camera view. Next, an officer can be seen braced with his back against the wall and when the camera returned to Plaintiff, Plaintiff looked at the officers to the right of him on the screen and asked, "who kicked me?" Plaintiff then returned to calling the officers names. The officer on the left side of the screen then placed his hand around Plaintiff's neck and began taking Plaintiff to the ground. According to Defendant Austin's affidavit, after Plaintiff was lifted to his feet to be escorted to segregation, he resisted by kicking and refused to stop kicking, so he was lowered to the ground. (Austin Aff. ¶ 10.) Once on the floor, the video shows that the officers told Plaintiff to stop resisting, to keep his hands behind his back, and the officers held his legs under their armpits. Plaintiff continued to swear and

18

complain, but the foot in view was not kicking nor did it appear that Plaintiff's body was obviously moving, twisting or otherwise causing serious difficulty for the officers.

Defendant Austin then had a gurney brought to the unit. Plaintiff was secured to the gurney and taken to segregation without further incident. (Austin Aff. ¶ 11.)

Plaintiff was evaluated by a registered nurse, Ms. Nixon, and when she asked Plaintiff if he suffered any injuries or had any pain, he did not respond. (Critical Incident Report, Doc. 22, Ex. B at 8-9.) The nurse found no sign of injuries on Plaintiff. (*Id*. at 9.)

Plaintiff did not specifically challenge the facts given in the affidavits but denied Defendants' contention that he was loud and disruptive. Plaintiff has not even alleged that he suffered any injuries from the incident. I therefore suggest that there is no genuine issue of material fact that the force used to accomplish the penological purpose was constitutionally proportionate and that any injury suffered by Plaintiff was *de minimus* and not of constitutional magnitude. *See Scott,* 127 S. Ct. at 1776 (where a party's version of the events is so utterly discredited by the record that no reasonable jury could believe that party, the court should "not have relied on such visible fiction"); *Jones Bey, supra* (*de minimus* injuries do not state a constitutional violation).

Although I am concerned by what I perceive to be discrepancies between Defendants' affidavits and what I viewed on the videotape, I suggest that for the reasons detailed above, these differences are not material and thus, do not merit resolution by trial. I therefore suggest that Defendants are entitled to summary judgment on this Eighth Amendment claim because the evidence "is so one-sided that one party must prevail as a matter of law." *Booker,* 879 F.2d at 1310.

d.      **Equal Protection**

19

Plaintiff also claims a violation of the "equal protection clause of both state and federal constitutions" when he was "segregated 10.21.2006 for going to the vending machine" "until Macomb Correctional Facility (MRF) discharged Petitioner absent any [r]eview of a major misconduct, or notice of intent, due process requires at the very least a timely [r]eview of the type of behavior that is unmanageable . . . ." (Compl. at 5-6.)

To the extent that Plaintiff's claim is actually a due process claim that the MDOC failed to follow its own policy in segregating him, "state statutes and regulations governing prison hearings do not create an independent federal due process liberty interest or right in the prisoner." *Sweeton v. Brown*, 27 F.3d 1162, 1164 (6th Cir. 1994).

To the extent that Plaintiff has alleged an equal protection claim, I suggest that it too must fail. The Fourteenth Amendment guarantees that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend XIV, § 1. "The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by the express terms of a statute or by its improper execution through duly constituted agents." *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445, 43 S. Ct. 190, 67 L. Ed. 2d 340 (1923) (internal quotation marks and citation omitted).

The Equal Protection clause of the Fourteenth Amendment essentially requires that all persons similarly situated be treated alike and should not be subjected to intentional discrimination by state actors on account of race. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000); *Knop v. Johnson*, 977 F.2d 996 (6th Cir. 1992). Here, Plaintiff does not allege that the regulations or policies governing segregation distinguish on the basis of race or any other suspect class. "To prove that a statute has been administered or enforced

discriminatorily, more must be shown than the fact that a benefit was denied to one person while conferred on another." *Sylvia Devel. Corp. v. Calvert County, Md.*, 48 F.3d 810, 819 (4th Cir. 1995).

"In order to prevail on an equal protection claim based upon the application of a facially neutral statute, [plaintiff] must establish that: (1) the plaintiff was treated differently than similarly situated persons; and (2) the defendant unequally applied the facially neutral statute for the purpose of discriminating against the plaintiff." *Strickland v. Alderman*, 74 F.3d 260, 264 (11th Cir. 1996). To show that Defendants' conduct was for the purpose of discrimination, Plaintiff must show that race discrimination was a substantial consideration that made a difference in a defendant's decision to take adverse action against the plaintiff. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 229, 265-66, 97 S. Ct. 441, 50 L. Ed. 2d 427 (1977). Similarly, "[a] prison inmate cannot support a claim that his equal protection rights were violated simply by showing that other inmates were treated differently. He must establish that a government official intentionally discriminated against him because of his membership in a protected class." *Searcy v. Gardner*, No. 3:07-0361, 2008 WL 400424, at *4 (M.D. Tenn. Feb. 11, 2008) (concluding that evidence of defendant's use of a racial epithet was insufficient to survive summary judgment); *accord Anthony v. Weidman*, No. 07-CV-10467, 2007 WL 2080303, at *1 (E.D. Mich. July 18, 2007) ("To succeed on an equal protection challenge, a plaintiff must also demonstrate the existence of discriminatory intent; arbitrary application of prison rules without discriminatory intent is insufficient . . . [m]ere disparity of treatment is insufficient . . . [w]ithout specific or concrete factual allegations of discrimination.") (citing *Jones v. White*, 992 F.2d 1548, 1573 (11th Cir. 1993), *McKlesky v. Kemp*, 481 U.S. 279, 292, 107 S. Ct. 1756, 95 L. Ed. 2d 262 (1987), and *Gutierrez v. Lynch*, 826 F.2d 1524, 1538 (6th Cir. 1987)).

21

Plaintiff does not allege or offer any evidence that any defendant made racially derogatory or any other type of discriminatory comments, let alone that any defendant admitted to having racial or other discriminatory animus; i.e., Plaintiff offers no direct evidence of discrimination. Absent direct evidence of racial discrimination, Plaintiff bears the initial burden of production under the *McDonnell Douglas*[14] burden-shifting scheme. *Michael v. Caterpillar Financial Services Corp.*, 496 F.3d 584, 593 (6th Cir. 2007). If Plaintiff meets this initial burden, this "'creates a rebuttable presumption of discrimination, and the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for taking the challenged [] action.'" *Id.* (quoting *Carter v. University of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003)).

If the defendant articulates a legitimate, nondiscriminatory reason, the burden of production shifts back to plaintiff to "'prove that the proffered reason was actually a pretext to hide unlawful discrimination.'" *Id.* Plaintiff can establish that the proffered reason is pretextual if it "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.,* 231 F.3d 1016, 1021 (6th Cir. 2000). *See also Wheeler v. McKinley Enters.*, 937 F.2d 1158, 1162 (6th Cir. 1991); *Young v. Sabbatine,* 238 F.3d 426, 2000 WL 1888672, at *4 (6th Cir. Dec. 19, 2000). Intentional discrimination may be inferred when a prima facie case is established and there is evidence of pretext. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) ("'The factfinder's disbelief of the reasons put forward by the defendant, particularly if disbelief is accompanied by a suspicion of mendacity, may, together with the elements of the prima facie case, suffice to show intentional discrimination.'") (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)).

---

[14]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

The elements of a *prima facie* case of discrimination are: (1) plaintiff is a member of a protected class, (2) he was subject to an adverse action, (3) he was treated less favorably than a similarly situated person outside of the protected class. *Perry v. McGinnis,* 209 F.3d 597, 601 (6th Cir. 2000); *Johnson v. University of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000); *Mallory v. Noble Correctional Institute*, 45 Fed. App'x 463, 471 (6th Cir. 2002).

Plaintiff has not alleged any facts that implicate inequality of treatment based on membership in a suspect class nor has Plaintiff alleged that other similarly situated prisoners were treated differently. I therefore suggest that Plaintiff has completely failed to allege or support a prima facie case. I further suggest that Plaintiff has not adequately alleged a "class-of-one" equal protection theory claim because he has not alleged that he was intentionally treated differently from other similarly situated persons such that there is no rational basis for the difference in treatment.[15] *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000); *Ross v. Duggan*, 402 F.3d 575, 588 (6th Cir. 2004). Accordingly, I suggest that summary judgment be granted in favor of Defendants on the equal protection claim.

### 3.    Other Arguments, John Doe Defendants and Conclusion

I do not address Defendants' defenses of qualified immunity or Eleventh Amendment immunity since I recommend dismissal based on the reasons stated above.

As to the "John Does," I suggest that dismissal of these potential defendants is proper. "In general, the use of unnamed defendants is not favored in the federal courts." *Haddad v. Fromson*, 154 F. Supp. 2d 1085, 1093 (W.D. Mich. 2001). "An inmate who brings a civil rights complaint

---

[15]I note that the "class-of-one" theory is not appropriate for areas involving discretionary decisions and further note that the complained of decision might be considered discretionary but I do not address this issue since I suggest that even if the class-of-one theory applies, Plaintiff has failed to state a claim under that theory. *Engquist v. Oregon Dep't of Agriculture*, ___ U.S. ___, 128 S. Ct. 2146, 2153-54, 170 L. Ed. 2d 975 (2008).

must specifically identify each defendant against whom relief is sought and must give each defendant notice of the action by serving upon him a summons and copy of the complaint." *Reed-Bey v. Pramstaller*, No. 06-10934, 2007 WL 2421422, at *2 (E.D. Mich. Aug. 23, 2007) (citing *Feliciano v. DuBois*, 846 F. Supp. 1033, 1048 (D. Mass. 1994)). Complaints that fail to state a claim against particular John Doe defendants may be dismissed on substantive grounds with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii). *Atkins v. Vadlamudi*, No. 07-10547, 2008 WL 1795023, at *8 (E.D. Mich. Mar. 18, 2008). Therefore, if this Report is adopted, I further suggest that the John Doe defendants be dismissed with prejudice.

For all the reasons stated above, I recommend that Defendants' motion for summary judgment be granted and that the case be dismissed in its entirety with prejudice.

## III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

s/ Charles E. Binder

CHARLES E. BINDER
United States Magistrate Judge

Dated: June 17, 2009

**<u>CERTIFICATION</u>**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served upon counsel of record via the Court's ECF system, and was mailed by the U.S. Postal Service to the following non-ECF participant: Niko Simmons # 197744, Carson City Correctional Facility, 10522 Boyer Road, Carson City, MI 48811-9757.

Date:  June 17, 2009                   By     s/Patricia T. Morris
                                       Law Clerk to Magistrate Judge Binder